IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RUTH MARDEN ) | |
| and JOHN MARDEN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:07-cv-0209 |
| ) | Judge Trauger |
| GAYLORD ENTERTAINMENT CO., ) | |
| c/o Carter R. Todd, ) | |
| DEVERY SIMS, ) | |
| and PHILIP DONALDSON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court is the Motion for Final Summary Judgment, or, in the Alternative, Partial Summary Judgment as to Punitive Damages filed by the defendant Gaylord Entertainment Co. ("Gaylord") (Docket No. 56), to which the plaintiffs have responded (Docket No. 64), and Gaylord has replied (Docket No. 24). For the reasons discussed herein, Gaylord's motion will be denied with respect to liability and granted with respect to punitive damages.

## BACKGROUND

This case arises out of injuries sustained by the plaintiffs after Ruth Marden fell on February 21, 2006 at Gaylord's Opryland Hotel, Resort & Convention Center ("Opryland Hotel").[1]

---

[1]Unless otherwise noted, the facts are drawn from Plaintiffs' Response to Defendant Gaylord Entertainment Company's Rule 56 Concise Statement fo Undisputed Material Facts (Docket No. 65) and Gaylord Entertainment Company's Responses to Plaintiffs' Concise

1

Mrs. Marden and her husband, John Marden, arrived at the Opryland Hotel on February 17, 2006 for a conference. During the next several days, they had reason to traverse a hallway leading to and from the hotel's Magnolia Lobby on multiple occasions. Located in this hallway was a shoe-shine stand operated by two of the defendants, Devery Sims and Philip Donaldson,[2] and in front of the shoe-shine stand was a large rubber-backed mat.

Mr. Marden testified that, during the course of their stay at Opryland Hotel but prior to Mrs. Marden's fall, he observed on several occasions that the mat in front of the shoe-shine stand was wrinkled, and he perceived this as a hazard. (J. Marden Dep. at 17.) On two occasions, he observed one of the shoe-shine attendants straightening the mat. (J. Marden Dep. at 19-20.) Additionally, Mr. Marden notified the desk staff of the mat's wrinkled condition on two occasions prior to Mrs. Marden's fall.[3] (J. Marden Dep. at 18, 21-22.). In each case, the staff member to whom Mr. Marden complained informed him that he could do nothing to fix the condition of the mat, but that he would "report" the situation. (J. Marden Dep. at 22.) Mr. Marden testified that, subsequent to his complaints, he observed that the mat had been straightened. (J. Marden Dep. at 24.)

On February 21, 2006, Mrs. Marden was traversing the hallway leading to and from the Magnolia Lobby. According to Mrs. Marden, just prior to her fall, she was waving to acquaintances walking in the opposite direction down the hall. (R. Marden Dep. at 39, 44.) She

---

Statement of Additional Material Facts (Docket No. 67).

[2]Neither Mr. Sims nor Mr. Donaldson has moved for summary judgment with respect to the plaintiffs' claims. Mr. Sims has been served with process (Docket No. 25) and filed an Answer (Docket No. 29). Mr. Donaldson has never been served. (Docket No. 26.)

[3]Mr. Marden's testimony suggests that the occasions on which he saw the attendant straightening the mat were not necessarily in response to his complaints. (J. Marden Dep. at 20.)

then noticed a large group of people walking quickly down the hall towards her, and she moved to the right to allow them room to pass. (R. Marden Dep. at 17, 44.) She tripped, falling to the floor and injuring her shoulder. Another guest at Opryland Hotel, F. Ray Jackson, observed Mrs. Marden's fall.

The plaintiffs subsequently brought this negligence claim against the defendants seeking compensatory and punitive damages. Gaylord has moved for summary judgment with respect to liability and, in the alternative, for summary judgment as to the plaintiffs' claim for punitive damages.

## ANALYSIS

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a

3

genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

**I.      Liability**

To establish a negligence claim, a plaintiff must demonstrate "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." *E.g.*, *Coln v. City of Savannah, Tenn.*, 966 S.W.2d 34, 39 (Tenn. 1998) (citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)), *overruled on other grounds by Cross*

4

*v. City of Memphis*, 20 S.W.3d 642 (Tenn. 2000). Gaylord asserts that summary judgment is appropriate as the plaintiffs cannot establish either that Gaylord owed Mrs. Marden a duty of care or causation. Additionally, Gaylord argues that the plaintiffs may not recover on their claims as Mrs. Marden was contributorily negligent.

    *A.    Duty*

The question of whether a duty exists is one of law and "requires consideration of whether such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of others—or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant." *Id.* (quotation and citation omitted). Duty is defined as "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm," and a duty exists "if defendant's conduct poses an unreasonable and foreseeable risk of harm." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). A risk is unreasonable where "the foreseeable probability and gravity of harm posed by the defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *Id.* This requires consideration of a number of factors, including "the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct." *Id.*

Additionally, the owner or possessor of premises has a duty to exercise reasonable care with respect to guests on those premises. *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998). This

5

principle encompasses a duty to remove or warn guests against "latent or hidden dangerous conditions on the premises of which one was aware or should have been aware through the exercise of reasonable diligence." *Id.* This duty exists even if the condition is "open and obvious." *Id.* This duty does not, however, require an owner to remove or warn guests against "conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care." *Id.* at 309 (quotation and citation omitted). Thus, the mere existence of a danger does not establish liability unless the danger is "of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it." *Id.*

In addition to these principles articulated by the Tennessee courts, the resolution of this case is informed by two cases involving factual situations very similar to that presented here. In *Mangum v. Golden Gallon Corp.*, No. 01A01-9709-CV-00459, 1999 WL 114221 (Tenn. Ct. App. Mar. 5, 1999), the plaintiff brought suit after tripping over a floor mat upon entering a convenience store, claiming that the mat itself constituted a dangerous condition as a matter of law and that the defendant had not properly maintained the mat by permitting it to become bunched or wrinkled. The court first held that large, rubber-backed floor mats are "ubiquitous" and that, when properly placed, they do not create a dangerous condition as a matter of law. *Id.* at *3. The court went on to note, however, that a mat that is "wrinkled, bunched up, worn through, or torn" may be a dangerous condition for which the owner of premises would be liable. *Id.* at *4. The court affirmed the district court ruling granting summary judgment for the defendant in *Mangum* because the plaintiff had not presented any proof that the mat was improperly maintained when he entered the store. *Id.* The court noted that the store had a policy of ensuring that the mat was properly placed and relied on an employee's testimony and video

6

evidence demonstrating that the mat was not bunched up when the plaintiff tripped, as well as the plaintiff's own testimony that he was uncertain whether the mat was bunched up when he fell. *Id.* at \*4-\*5. On the basis of this evidence, the court concluded that "reasonable minds can only conclude [that the defendant's] placement and maintenance of the floor mat at the entrance to its market did not create a dangerous condition." *Id.* at \*5.

A federal district court addressed a similar issue in *Harrison v. Pantry, Inc.*, No. 1:04-CV-318, 2005 WL 2671244 (E.D. Tenn. Oct. 19, 2005), where the plaintiff also brought suit after tripping over a floor mat at the entrance to a convenience store. The *Harrison* court relied on *Mangum* for the proposition that "a plaintiff 'cannot succeed without proof that the [defendant's] employees did not properly maintain the floor mat and that the floor mat was in a dangerous condition when [the plaintiff] entered the [premises].'" *Id.* at \*3 (citing *Mangum*, 1999 WL 114221, at \*4). The court noted that, though the plaintiff alleged that the defendant "knew its floors [*sic*] mats could fold over," the plaintiff had presented no evidence to demonstrate that the mat was in fact folded over on the day of the plaintiff's fall. *Id.* Thus, the court held that there was no evidence that the mat created a dangerous condition giving rise to a duty to remove the mat or warn the plaintiff against it. *Id.*

Like the plaintiffs in *Mangum* and *Harrison*, Mrs. Marden's claims stem from injuries she suffered after tripping over a rubber-backed mat on Gaylord's premises. Essentially, she claims that the condition of the mat created an unreasonable and foreseeable risk of harm, and thus that Gaylord should be held liable for her injuries. As with any negligence case, the focus of this analysis is "upon duty in accordance with the feasibility and gravity of harm, and the feasibility and availability of alternatives." *Coln*, 966 S.W.2d at 42.

7

As the *Mangum* court noted, under ordinary circumstances, a mat like the one at issue here does not create a dangerous condition as a matter of law.[4] It may, however, constitute a dangerous condition if it is improperly maintained, in that it is allowed to become, for example, wrinkled, bunched, folded over, worn, or frayed. Although Mrs. Marden testified that she did not see the mat before she fell (R. Marden Dep. at 31, 54), she also testified that she "*tripped over* the black mat in front of the shoeshine stand" (R. Marden Dep. at 20 (emphasis added)). Additionally, she relies on the testimony of a witness, F. Ray Jackson, as proof that the mat was wrinkled when she fell. Mr. Jackson's affidavit states that he "saw Mrs. Marden trip over the black rubber mat," and subsequently "noticed that about four inches of the mat on the end closest to where she had fallen was curled up." (Docket No. 64 Ex. 4.) Mrs. Marden also cites, as evidence of the mat's dangerous condition, the facts that, prior to her fall, she and her husband had observed the mat in a wrinkled condition, complained about the mat's wrinkled condition to Opryland Hotel staff, and observed staff straightening the mat.

Mrs. Marden has presented sufficient evidence to survive summary judgment with respect to the question of duty, in light of her testimony that she "tripped over" the mat, Mr. Jackson's testimony that he saw Mrs. Marden trip on the mat and observed that the mat was wrinkled after her fall,[5] and the evidence that this particular mat had a propensity to become wrinkled repeatedly, a fact that Gaylord had notice of, given Mr. Marden's previous complaints

---

[4]Mrs. Marden herself characterized the mat as the kind that one sees "everywhere." (R. Marden Dep. at 29.)

[5]Although it is certainly arguable that the mat's wrinkled state was caused by Mrs. Marden's fall rather than vice versa, that is a factual question not amenable to resolution on summary judgment.

8

to the desk staff.[6]  This case may therefore be distinguished from *Mangum* and *Harrison* to the extent that there is some evidence here of the mat's dangerous condition at the time of Mrs. Marden's fall.  In *Mangum*, the evidence affirmatively demonstrated that the mat in question in that case was properly placed and maintained at the time of the plaintiff's injury.  Moreover, although the *Harrison* court noted that the mat in question was capable of folding up, there was no evidence of its condition at the time of the accident.  By contrast, the evidence here creates, at the very least, a reasonable inference that the mat was wrinkled at the time of Mrs. Marden's fall given the frequency with which the mat had become wrinkled in the days prior to the accident.

Opryland relies on the facts that it had in place a policy requiring employees to report or correct unsafe conditions, and that several employees testified as to both the policy (Sulligan Dep. at 15-16; Sweigard Dep. at 19; Parrish Dep. at 28; Tucker Dep. at 13) and that they themselves would have straightened the mat or reported the situation had they observed the mat to be wrinkled or received a complaint to that effect (Sulligan Dep. at 19; Sweigard Dep. at 20, 23-24; Tucker Dep. at 7, 15).[7]  However, such a policy cannot immunize Opryland from liability where the problem was not that the mat became wrinkled once, but rather that it was a recurring problem, and Opryland apparently took only short-term steps to resolve the situation rather than removing or replacing the mat altogether.

In light of the evidence of the mat's wrinkled state and the relative ease and insubstantial cost of removing or replacing the mat, there is a genuine issue of fact as to the question of duty

---

[6]Additionally, an Opryland employee testified that he was aware that the mat became wrinkled "[q]uite often."  (Sweigard Dep at 9.)

[7]None of the deposed employees recalled either receiving a complaint from Mr. Marden or observing Mrs. Marden's fall, and there is no indication that any of these individuals were working at the time of Mrs. Marden's fall.

9

and whether the foreseeable probability and gravity of harm outweighed the burden on Gaylord of preventing that harm.

      B.      *Causation*

A negligence claim requires a showing of both causation in fact and proximate cause. *Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005); *see also Coln*, 966 S.W.2d at 39. A plaintiff establishes causation in fact if the defendant's conduct "directly contributed to the plaintiff's injury," requiring consideration of whether the injury would have happened "but for" the defendants' act. *Hale*, 166 S.W.3d at 718. Proximate cause is established if the defendants' conduct was a "substantial factor" in bringing about the plaintiff's injury, if there is no rule or policy to relieve the defendant's liability, and if the harm was reasonably foreseeable by an individual of ordinary intelligence and care. *Id.*; *see also Haynes v. Hamilton County*, 883 S.W.2d 606, 612 (Tenn. 1994). Both causation in fact and proximate cause are "ordinarily jury questions, unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome." *Hale*, 166 S.W.3d at 718.

Here, Gaylord argues that the plaintiffs cannot establish causation because Mrs. Marden testified that she did not see the mat and had no knowledge of its condition immediately prior to her fall.[8] The fact that Mrs. Marden did not see the mat prior to her fall does not doom her claim, however, as she has pointed to a likely cause of her fall and has eyewitness testimony to support that allegation. And although Gaylord, once again, argues that the mat's wrinkled condition may

---

[8]Although Gaylord does not specify whether it is challenging the plaintiffs' ability to prove causation in fact or proximate cause, its arguments seem to address causation in fact, or "but for" causation, rather than proximate cause, which operates to "put[] a limit on the causal chain, such that, even though the plaintiff's injury would not have happened but for the defendants' breach, defendants will not be held liable for injuries that were not substantially caused by their conduct or were not reasonably foreseeable results of their conduct." *Id.* at 719.

have been caused by Mrs. Marden's fall rather than the inverse, this is a question of fact for the jury.

> C. *Comparative Fault*

Under Tennessee law, a plaintiff may not recover on a negligence claim if his or her fault is "equal to or greater than the fault attributable to the defendant." *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994); *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992) (adopting system of modified comparative fault and holding that "so long as a plaintiff's negligence remains less than the defendant's negligence the plaintiff may recover [with] damages reduced in proportion to the percentage of the total negligence attributable to the plaintiff"). The apportioning of fault depends on the particular circumstances of the case, including factors such as "(1) the relative closeness of the causal relationship between the conduct of the defendants and the injury to the plaintiff; (2) the reasonableness of the party's conduct in confronting a risk, such as whether the party knew of the risk, or should have known of it; (3) the extent to which the defendant failed to reasonably utilize an existing opportunity to avoid the injury to the plaintiff; (4) the existence of a sudden emergency requiring a hasty decision; (5) the significance of what the party was attempting to accomplish by the conduct, such as an attempt to save another's life; and (6) the party's particular capacities, such as age, maturity, training, education, and so forth." *Eaton*, 891 S.W.2d at 592. Summary judgment may be granted where "the evidence is evaluated in the light most favorable to the plaintiff and reasonable minds could not differ that [the plaintiff's] fault was equal to or great[er] than that of the defendants." *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 91-92 (Tenn. 2000) (citing *Coln*, 966 S.W.2d at 44).

There is some evidence that Mrs. Marden's own actions contributed to her injuries. She testified repeatedly that she was aware of the mat's presence in the hallway, was aware that the

mat had been wrinkled on at least two occasions prior to her fall, and had previously judged the mat as posing a danger to passers-by.[9] Additionally, there is evidence that she may have been distracted by people walking in the other direction at the time of her fall. However, in light of Gaylord's apparent failure to address the often-wrinkled mat, reasonable minds could differ as to whether Mrs. Marden was fifty percent at fault for her accident. The question of contributory negligence thus must be resolved by a jury rather than on Gaylord's motion for summary judgment.

## II. Punitive Damages

As an alternative to a ruling in its favor on the question of liability, Gaylord seeks summary judgment with respect to the plaintiffs' claim for punitive damages. To recover on a claim for punitive damages, a plaintiff must demonstrate "the defendant's intentional, fraudulent, malicious, or reckless conduct by clear and convincing evidence." *Hodges v. V.S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). The evidence here does not establish a genuine issue of fact that Gaylord's actions were intentional, fraudulent, malicious, or reckless, or that this is one of those "most egregious" of cases warranting an award of punitive damages. *Id.* Thus, Gaylord's motion for summary judgment with respect to the plaintiffs' claims for punitive damages will be granted.

---

[9]Mrs. Marden testified that the mat was present in the hallway "all the time that I was there [at Opryland Hotel]" (R. Marden Dep. at 26) and that she had traversed the hallway many times each day, but had not had any problem with the mat prior to her fall (R. Marden Dep. at 36). Additionally, she stated that she had observed the mat in a wrinkled state on two occasions prior to her fall. (R. Marden Dep. at 27). In one case, she was with her husband. (*Id.*) Then, the day before her fall, someone else pointed out to her that the mat was not laying flat, and she concurred that it was dangerous. (R. Marden Dep. at 26.)

12

## CONCLUSION

For the reasons discussed herein, the Motion for Final Summary Judgment, or, in the Alternative, Partial Summary Judgment as to Punitive Damages filed by the defendant Gaylord Entertainment Co. will be denied with respect to liability and granted with respect to punitive damages.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

13